## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| RONNIE G. PERRINE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-cv-3045 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

Plaintiff Ronnie G. Perrine appeals from the denial of his application

for Supplemental Security Income ( "Disability Benefits") under the Social

Security Act.  42 U.S.C. § 1381a, and 1382c.  This appeal is brought

pursuant to 42 U.S.C. §§ 405(g) and 1383(c).  Perrine has filed a Brief in

Support of Motion for Summary Judgment (d/e 11) (Motion for Summary

Judgment), and Defendant Commissioner of Social Security has filed a

Memorandum in Support of Motion for Summary Affirmance (d/e 12)

(Motion for Summary Affirmance).[1]  The parties consented, pursuant to 28

U.S.C. § 636(c), to have this matter proceed before this Court.  Consent to

---

[1]Neither party has filed a motion for summary judgment as required by the Local
Rules.  Local Rule 8.1(D).  The Court deems the memoranda filed by the parties to be
motions for summary judgment.

Proceed Before a United States Magistrate Judge, and Order of Reference

entered April 15, 2011 (d/e 8).  For the reasons set forth below, the

Decision of the Commissioner is reversed and remanded for further

proceedings.

## STATEMENT OF FACTS

Perrine was born on August 15, 1954.  Answer to Complaint (d/e

6),attached Certified Transcript of Record of Proceedings Before the Social

Security Administration (R.), at 9.  Perrine completed the eleventh grade.

Perrine previously worked as an ironworker and foreman for more than

twenty years beginning in 1974.  He also worked from 1990 to 1992 as a

hog seller.  R. 9.  On November 24, 2004, Perrine had left carpal tunnel

release surgery, and later returned to work as a ironwork foreman.  On

October 13, 2005, he fell while he was at work and injured his neck.

R. 413.

Shortly after the October 2005 accident, Perrine received an epidural

injection for the pain.   The injection relieved about ninety-five percent of

the pain.  R. 414.  On November 22, 2005, Perrine underwent a cervical

spine MRI.  The MRI showed mild to moderate diffuse spondylosis and

central canal and neural foraminal stenosis at multiple disc levels.  R. 307.

Perrine underwent physical therapy in October and November 2005.

R. 357-93.  He reported that the physical therapy provided no relief from his pain.  R. 414.

On January 5, 2006, and January 26, 2006, Perrine received epidural injections for pain.  R. 325, 332.  The injection relieved the pain until March 2006, when Perrine noticed an increase in neck pain after raking leaves. R. 414.

On May 22, 2006, Dr. Arden F. Reynolds, Jr., M.D., performed a microdiscectomy and anterior fusion from C3 to C6 in Perrine's cervical spine.  R. 441-43.  As of June 5, 2006, Perrine reported minimal neck pain. R. 418.  Perrine reported that his prescription pain medication helped. R. 418.  On August 1, 2006, Perrine reported to Dr. Reynolds that he had no neck pain.  R. 420.

On September 7, 2006, Perrine reported to Dr. Reynolds that he had increased neck pain and headaches after he resumed his job as an ironworker and began digging post holes.  R. 421-22.  On October 9, 2006, Perrine stopped working and resumed therapy because he was having severe pain and headaches.  R. 422.  On October 23, 2006, Perrine reported to Dr. Reynolds that his headaches occurred every two to three days.  R. 424.

On December 7, 2006, Perrine told Dr. Reynolds that physical therapy provided some pain relief, but he still had moderate trapezius

muscle spasms. Dr. Reynolds observed that Perrine had a fifty percent loss in his range of motion in right and left rotation, flexion, extension, and right and left lateral bending. R. 423. Dr. Reynolds observed full or near full strength in Perrine's deltoid, biceps and triceps muscles. R. 423. Dr. Reynolds left Perrine on no-work status because he could not look up and down satisfactorily. R. 426.

On February 13, 2007, Perrine reported some headaches. Dr. Reynolds observed normal upper body strength and no muscle spasms, and told Perrine he could resume work that did not involve repetitive shoveling, climbing ladders, or repetitive reaching above shoulder level. R. 425.

On April 24, 2007, Perrine reported dramatic limitations in turning his neck, and that he could not drive a tractor or truck for very long because he got severe headaches. He also reported severe headaches if he turned his head to the right. He reported that his hands fatigued and he occasionally dropped things. Dr. Reynolds found that Perrine's grip strength was fifty percent of normal. On examination, Perrine's range of motion in his neck was about five degrees, which Dr. Reynolds noted was a small percentage of normal. Right and left lateral rotation of his neck was about fifteen degrees which Dr. Reynolds noted was less that fifty percent of normal. Flexion was about ten degrees which Dr. Reynolds noted was less than

fifty percent of normal. R. 428. Dr. Reynolds stated that Perrine could not return to work because of the limited range of motion in his neck and the risk that he would be to others. R. 438.

On April 24, 2007, Dr. Reynolds completed a form for Perrine's union in which Dr. Reynolds opined,

> As a result of this examination, the patient was found to be totally and permanently disabled pursuant to the following definition:
>
> . . . . "Must be totally disabled by bodily injury or disease so as to be prevented thereby from engaging in further work as an IRONWORKER or any other type of Building Trades Craftsman, and such disability will be permanent and continuous form the remainder of his/her lifetime."

R. 501. Dr. Reynolds also stated in his notes on April 24, 1007,

> Additionally, because of the weakness in the hands and a rotator cuff problem with the left shoulder which is probably due to repetitive trauma from his work, he will not be able to carry the weights required to do his job.
>
> Therefore I see him as permanently and totally disabled.

R. 429.

On July 21, 2007, Dr. Raymond Leung, M.D., performed a consultative examination of Perrine. R. 458-62. Dr. Leung observed normal grip strength and digital dexterity for fine and gross movements in both hands. Dr. Leung observed limited range of motion in Perrine's neck. All other aspects of the examination were normal or unremarkable. R. 460.

On July 30, 2007, Dr. Virgilio Pilapil, M.D., completed a Residual Functional Capacity Assessment. R. 57-64. Dr. Pilapil opined that Perrine could lift fifty pounds occasionally and lift twenty-five pounds frequently. Dr. Pilapil opined that Perrine could stand/walk or sit for six hours in an eight hour workday. R. 58. Dr. Pilapil further opined that Perrine could climb ladders, ropes or scaffolds frequently, and was limited in reaching overhead. R. 59-60.

On September 4, 2007, Perrine saw his primary care physician Dr. Richard Noble, M.D., for pain management. Perrine was taking Darvocet and Firoicet for neck pain and headaches. Dr. Noble discussed pain management techniques, including range of motion exercises for the neck, and adjusted Perrine's pain medication. Dr. Noble stated in his notes that Perrine "is now disabled." R. 468. Dr. Noble also completed the same form that Dr. Reynolds completed for Perrine's union rendering the same opinion,

> As a result of this examination, the patient was found to be totally and permanently disabled pursuant to the following definition:
>
> . . . . "Must be totally disabled by bodily injury or disease so as to be prevented thereby from engaging in further work as an IRONWORKER or any other type of Building Trades Craftsman, and such disability will be permanent and continuous form the remainder of his/her lifetime."

R. 503.

On November 8, 2007, Dr. William Conroy, M.D. completed a

Residual Functional Capacity Assessment. R. 67-74. Dr. Conroy opined

that Perrine could lift twenty pounds occasionally and ten pounds

frequently. Dr. Conroy opined that Perrine could stand/walk or sit about six

hours each in an eight-hour workday. R. 68. Dr. Conroy found no other

limitations. R. 69-71.

Perrine saw Dr. Noble in January 24, 2008, April 7, 2008, and June

26 and 27, 2008. R. 490-97. Dr. Noble adjusted Perrine's pain

medications at these times. Dr. Noble continued Perrine's prescriptions of

Ultram and Darvocet beginning on January 24, 2008. R. 490. On June 27,

2008, Dr. Noble changed the medication to methadone and Darvocet.

R. 499.

On June 1, 2009, the Administrative Law Judge (ALJ) conducted an

administrative hearing. R. 20-56. The hearing was conducted by

teleconference. The ALJ and vocational expert Dr. Jeffrey F. Magrowski,

Ph.D., were in St. Louis, Missouri, and Perrine, his wife and his counsel

were in Hannibal, Missouri.[2] R. 22. Perrine and Magrowski testified at the

hearing.

---

[2]The transcript of the hearing spells the expert's last name as "Mogrowski," while
the ALJ's decision and the expert's resume spells the last name as "Magrowski." R. 8,
125. The Court uses the latter spelling in this Opinion.

Perrine lived in Hull, Illinois, ten miles east of Hannibal. R. 25. He lived with his wife in a two-story home with a basement. Perrine had to climb three steps to enter the home. Perrine testified that he drove about twenty miles a week. R. 26. He was received a disability pension from his union and received a workers compensation award as a result of the 2005 injury. R. 26-27.

Perrine testified that he last worked in October 2006. R. 28. Perrine testified that he was off work after the 2005 accident for about six to eight months. He tried to go back to work in 2006, but could not do the job. R. 30. He applied for work at a few other places because of his ongoing workers compensation suit. He testified that he applied because his lawyer told him to, but he knew he could not do the jobs. R. 51.

Perrine testified that he usually got up about 5:30 or 6:00 a.m. and made coffee for his wife before she went to work. His wife worked as a secretary. He testified that he "piddled around" the rest of the day since he did not have much to do. R. 33. He watched a little television.

Perrine testified that he had a garden where he grew two dozen tomato plants and five or six rows of sweet corn. The corn rows were fifty feet long. His neighbor planted the garden for him last year, but Perrine planted the garden this year. Perrine used a planter that he walked behind to plant the corn. His wife helped him plant the tomatoes. R. 33-34. He

sprayed the garden with chemicals, but did not weed, water, or otherwise tend the garden.  R. 34.

Perrine testified that he cooked very little.  He could fry an egg and make toast and could make a sandwich.  R. 32.  He testified that he helped very little around the house.  He loaded and unloaded the dishwasher, but did not wash dishes.  R. 32.  His wife did the grocery shopping.  He occasionally bought dog food at the Farm Supply store.  R. 32-33.  His wife did ninety-nine percent of the lawn mowing.  R. 35

Perrine liked to hunt and fish before he became injured.  Perrine hunted for two days the prior winter.  R. 36.  The last time Perrine fished was before he got hurt.  R. 36.  Perrine did not socialize other than with his wife and two adult children.  He also regularly talked to one of his neighbors.  R. 35

Perrine could bathe himself and dress himself.  He wore slip-on boots because he had trouble bending over.  He had to sit down to put on blue jeans because of a hip problem.  R. 49.

Perrine was taking methadone once a day for pain, Darvocet every two to three days when he had more pain, Sertraline for depression, and

Zantac for acid reflux. R. 39. He stated that the Darvocet made him drowsy. R. 40.[3]

Perrine testified that he had severe headaches every day. He took the Darvocet for the headaches. The Darvocet usually helped if he also lay down for an half an hour or so. R. 40. Perrine also testified that he had neck pain that radiated into his shoulders; however, he could still use his arms for daily activities. R. 46. Perrine testified that he had carpal tunnel syndrome in both hands. He would drop things and could not get a good grip on things. R. 40. He testified that he had problems with his right hip, but had not seen a doctor about it. R. 41. He testified that he did not like doctors and did not have the finances to pay a doctor treat his hip problem. R. 40, 43. He also testified that he had a rotator cuff injury in the 1990s. R. 46.

Perrine testified that could not get comfortable sitting in a chair. He could stand for fifteen to twenty minutes at a time. He could not walk very far because of his hip. He testified that he could not lift more than ten pounds. R. 43. He testified that he could walk half a mile and lift twenty-five pounds in 2007, but that was before he developed a hip problem. R. 43.

---

[3]Perrine also suffered from depression. Perrine did not appeal the ALJ's findings regarding his depression so the Court does not discuss the evidence regarding depression.

Perrine testified that he could not bend over at the waist, he could not look up, and he could not reach up to take anything out of a kitchen cabinet. He had get on his hands and knees to pick anything up off the floor. R. 44. He could not look to the left or right while driving because of his inability to turn his neck. He also could not look down without bending over because of the limited ability to move his neck. R. 45. Perrine testified that he had difficulty sleeping because he could not get comfortable in any position. R. 47.

Vocational expert Magrowski then testified. The ALJ asked Magrowski about Perrine's past relevant work experience. R. 52-53. The ALJ asked Magrowski the following hypothetical question:

> Please assume a person the age of 54 with a limited education and the past relevant work experience that you have identified. Please assume I would find the person capable of performing the exertional demands of light work as defined in the Social Security regulations. Specifically the person could lift, carry, push, pull 20 pounds occasionally, 10 pounds frequently. Sit, stand, walk each six out of eight for a combined total of eight out of eight. I would limit the person to occasional climb, stoop and crouch, with no exposure to ladders, ropes, or scaffolds. With regard to that hypothetical, would there be transferable work skills?

R. 53. Magrowski opined that such a person would have transferable skills for machine operating and some assembly work. R. 54. Magrowski also opined that such a person could not perform Perrine's past relevant work. R. 54. Magrowski opined that such a person would be able to perform

other jobs such as a machine operator and some light assembly work.

R. 54.  Magrowski opined that there were 2,000 machine operator jobs in

the state of Missouri and 70,000 nationally, and 3,000 light assembly jobs

in the state of Missouri and 200,000 nationally.  R. 54.  Magrowski said

these two job titles were representative of the jobs the person could do and

were not an exhaustive list.  R. 54.

Perrine's counsel then had the following colloquy with Magrowski

regarding the effect of adding an inability to move the neck to the

limitations in the ALJ's hypothetical question:

> Q     What about the inability to move his neck?
>
> A     . . . [T]he limitation in motion would interfere with the machine operating and especially the assembly work.
>
> Q     And if he had those limitations, would that also affect his ability to do any kind of sedentary work?
>
> A     I think so.

R. 56.  The ALJ then concluded the hearing.

## THE DECISION OF THE ALJ

The ALJ issued his decision on July 20, 2009.  R. 8-17.  The ALJ

followed the five-step analysis set forth in Social Security Administration

Regulations (Analysis).  20 C.F.R. §§ 404.1520, 416.920.  Step 1 requires

that the claimant not be currently engaged in substantial gainful activity.

20 C.F.R. §§ 404.1520(b), 416.920(b).  If true, Step 2 requires the claimant

to have a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c).  If

true, Step 3 requires a determination of whether the claimant is so severely

impaired that he is disabled regardless of the claimant's age, education

and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).  The listings

of such severe impairments are set forth in 20 C.F.R. Part 404 Subpart P,

Appendix 1 (Listing).  The claimant's condition or combination of conditions

must meet the criteria in a Listing or be equal to the criteria in a Listing.

20 C.F.R. §§ 404.1520(d), 416.920(d).

     If the claimant is not so severely impaired, then Step 4 requires the

claimant not to be able to return to his prior work considering his Residual

Functional Capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the

claimant cannot return to his prior work, then Step 5 requires a

determination of whether the claimant is disabled considering his RFC,

age, education, and past work experience.  20 C.F.R. §§ 404.1520(f),

416.920(f).  The claimant has the burden of presenting evidence and

proving the issues on the first four steps.  The Commissioner has the

burden on the last step; the Commissioner must show that, considering the

listed factors, the claimant can perform some type of gainful employment

that exists in the national economy.  Briscoe ex rel. Taylor v. Barnhart,

425 F.3d 345, 352 (7th Cir. 2005); Knight v. Chater, 55 F.3d 309, 313

(7th Cir. 1995).

The ALJ found that Perrine met his burden at Steps 1 and 2. He had

not engaged in substantial gainful activity since October 29, 2005, and he

suffered from status-post cervical spine microdiscectomy and fusion,

degenerative disc disease, status-post left carpal tunnel syndrome release,

and headaches. R. 15. At Step 3, the ALJ found that none of Perrine's

impairments, either alone or in combination, equaled the severity of the

requirements for any Listing. R. 16.

At Step 4, the ALJ found that Perrine had the RFC to perform light

work limited to occasional climbing, stooping and crouching, and with no

exposure to ladders, ropes, or scaffolds. R. 12.

The ALJ discounted the opinions of Drs. Reynolds and Noble

because those opinions related to Perrine's ability to perform the job of an

ironworker or other similar trade, not to whether he would be disabled from

performing less physically demanding jobs. R. 13. The ALJ also found

that Perrine's testimony about he severity of his symptoms was not

credible.

R. 15. The ALJ relied on the medical examination of Dr. Leung, and the

fact that Perrine did not show signs typically associated with chronic,

severe musculoskeletal pain such as muscle atrophy, muscle spasms, and

neurological deficits.  R. 14.

Based on Perrine's RFC and Magrowski's testimony, the ALJ found

at Step 4 that Perrine could not perform his past relevant work.  At Step 5,

the ALJ found that Perrine could perform a significant number of jobs that

exist in the national economy.  The ALJ relied on the Medical-Vocational

Guidelines, and Magrowski's opinion that Perrine could perform the

machine operator and light assembly jobs.  R. 15.  The ALJ specifically

stated that Magrowski testified that a limitation on head turning would not

affect the ability to perform these jobs, "[Magrowski] said that the limited

head turning ability would affect the claimant's ability to do certain

sedentary jobs, but not the light ones he identified."  R. 13.  Based on these

findings, the ALJ found that Perrine was not disabled.  R. 16.

Perrine appealed to the Appeals Council.  On December 27, 2010,

the Appeals Council denied Perrine's request for review.  Perrine then filed

this action for judicial review.

## ANALYSIS

This Court reviews the ALJ's Decision to determine whether it is

supported by substantial evidence.  In making this review, the Court

considers the evidence that was before the ALJ.  Wolfe v. Shalala, 997

F.2d 321, 322 n.3 (7th Cir. 1993).  Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate" to support the

decision.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  This Court

must accept the ALJ's findings if they are supported by substantial

evidence, and may not substitute its judgment for that of the ALJ.  Delgado

v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986).  This Court will not review the

credibility determinations of the ALJ unless the determinations lack any

explanation or support in the record.  Elder v. Astrue, 529 F.3d 408, 413-14

(7th Cir. 2008).  The ALJ must articulate at least minimally his analysis of all

relevant evidence.  Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994).

The Court must be able to "track" the analysis to determine whether the

ALJ considered all the important evidence.  Diaz v. Chater, 55 F.3d 300,

308 (7th Cir. 1995).

In this case, the Court cannot track the ALJ's treatment of the

evidence regarding Perrine's limited ability to move his neck.  The ALJ

misstated Magrowski's testimony regarding the effect of Perrine's limited

ability to move his neck, and the ALJ did not explain his analysis of the

relevant medical evidence regarding Perrine's ability to move his neck.

The ALJ incorrectly stated in his decision that Magrowski opined that the

limitation in the ability to turn his head would not affect Perrine's ability to

perform the machine operator and light assembly job identified by

Magrowski.  R. 13.  Magrowski, however, testified that a limited ability to

move his neck would interfere with Perrine's ability to perform "the machine

operating and especially the assembly work." R. 56. Given this error, the Court cannot tell whether the ALJ decided that the evidence about Perrine's limited ability to move his neck was credible but not material because the ALJ misunderstood Magrowski's testimony or whether the ALJ found that the evidence was not credible and that Perrine, in fact, had no limitations in his ability to move his neck or turn his head.

If the ALJ concluded that the evidence that Perrine was limited in his ability to move his head was credible but not material, then the decision is not supported by substantial evidence. The ALJ specifically relied on Magrowski's opinions at Step 5 that Perrine could perform the machine operator and light assembly jobs; however, Magrowski opined a limitation in the ability to move the head would have interfered with the ability to perform the two jobs identified by Magrowski. Thus, if the ALJ concluded that evidence of Perrine's inability to move his neck and head was credible, the decision was not supported by Magrowski's opinion at Step 5, and so, not supported by substantial evidence.

If the ALJ concluded that the evidence of Perrine's limited ability to move his neck was not credible, then the ALJ should have explained his analysis of the medical evidence regarding this issue. The ALJ must articulate at least minimally his analysis of all relevant evidence. Herron v. Shalala, 19 F.3d at 333. Magrowski opined that the limitation in movement

of the head would interfere with the two light jobs he identified in his opinion. Perrine's treating physician, Dr. Reynolds, found that Perrine was limited in moving his neck and head. R. 428. The consulting examining physician, Dr. Leung, also found that Perrine was limited in his ability to move his neck. R. 460. The ALJ did not discuss the evidence. The ALJ should have addressed the medical evidence if he found that Perrine had no limitation in the movement of his neck and head. Because of these errors, the decision must be reversed and remanded for further proceedings.

The Commissioner argues that the ALJ must have concluded that Perrine did not have significant limitations in the movement of his neck and head because he did not include any such limitations in his formulation of Perrine's RFC. The ALJ's decision is not clear enough to draw that conclusion. If, however, the ALJ concluded that Perrine did not have significant limitations in the movement of his neck or head, the ALJ needed to explain his analysis of the contrary medical evidence from Drs. Reynolds and Leung. He did not. Thus, the decision must be reversed and remanded regardless of whether the ALJ's RFC formulation indicates a finding about Perrine's ability to move his neck and head.

The Court finds no other error in the ALJ's decision. The evidence supports the ALJ's finding that the opinions of Drs. Reynolds and Noble

related to the union definition of disability quoted above.  That definition of disability related to work as an ironworker and related trades, not to the definition of disability under the Social Security statutes.  This Court also will not review the credibility determinations of the ALJ unless the determinations lack any explanation or support in the record.  Elder v. Astrue, 529 F.3d 408, 413-14 (7th Cir. 2008).  In this case, the ALJ explained the basis for his credibility findings, and the opinion of Dr. Leung supports those findings.  Finally, the ALJ did not err because Perrine reapplied for benefits in 2011 and was subsequently found to be disabled as of July 21, 2009.  Perrine does not move to remand  under sentence six of § 405(g) to consider any new evidence presented in connection with the 2011 disability application.   See Martin v. Astrue, 2008 WL 7019079 (C.D. Ill. 2008).  Thus, the issue of whether to consider that evidence is not properly before the Court.  The Court makes no comment, however, on whether Perrine may present new evidence on remand.

WHEREFORE, Plaintiff's Motion for Summary Judgment (d/e 11) is ALLOWED and the Commissioner's Motion for Summary Affirmance (d/e 12) is DENIED.  The decision of the Commissioner is reversed and the

case is remanded to the Commissioner for further proceedings pursuant to

sentence four of 42 U.S.C. §405(g). THIS CASE IS CLOSED.


ENTER:    January 30, 2012


                    *s/ Byron G. Cudmore*
                BYRON G. CUDMORE
        UNITED STATES MAGISTRATE JUDGE